UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TANYA Y.[1],

        Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

23-CV-655 (JLS)

---

## DECISION AND ORDER

Plaintiff Tanya Y. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 4–1. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 5–1, 6. For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## **PROCEDURAL HISTORY**

This action originates from Plaintiff's application for Disability Insurance Benefits ("DIB") and her application for Supplemental Security Income ("SSI"), both filed on June 29, 2016.[2] Tr. 283–90.[3] On April 12, 2019, ALJ Stephan Bell issued a decision finding Plaintiff was not disabled. Tr. 15–28. On April 13, 2020, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. Tr. 820–25. On April 14, 2022, the United States District Court for the Western District of New York entered a decision and order remanding Plaintiff's case for further proceedings. Tr. 826–38; *Tanya Y. v. Comm'r of Soc. Sec.*, No. 20-CV-712, 2022 WL 1115458 (W.D.N.Y. Apr. 14, 2022).

On October 17, 2022, the AC entered a Notice of Order of Appeals Council Remanding Case to the Administrative Law Judge ("ALJ"). Tr. 840–44. On February 21, 2023, Plaintiff appeared before ALJ Stephan Bell. Tr. 761–95. On March 10, 2023, ALJ Bell issued a written decision finding Plaintiff not disabled

---

[2] Plaintiff applied for both DIB and SSI. To receive DIB, a claimant must show that he or she became disabled while meeting the Act's insured status requirements. *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022). SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level." *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted). The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

[3] The filing at Dkt. 3 is the transcript of the proceedings before the Social Security Administration. All references to Dkt. 3 are hereby denoted "Tr. __."

under the Social Security Act. Tr. 741–52. Plaintiff timely sought judicial review in this Court.

## LEGAL STANDARDS

### I. DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013). The Commissioner's factual findings are conclusive when supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review. *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures

"that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test. *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is work activity that involves significant physical or mental activities and is normally done for pay or profit. 20 C.F.R. §§ 404.1572, 416.972. If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). Absent such impairment, the claimant may not claim disability. *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If such criteria are met, then the claimant is declared disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R.

4

§§ 404.1520(e), 416.920(e). The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. 20 C.F.R. §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is capable of performing past relevant work, then the claimant is not disabled. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1560(c), 416.960(c). Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

# DISCUSSION

## I. THE ALJ'S DECISION

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 15, 2015, her alleged onset date. Tr. 743. The ALJ also found that Plaintiff suffered from the following severe impairments: osteoarthritis of the right elbow; atopic dermatitis/eczema, overactive bladder, obesity, Raynaud's syndrome, and mental impairments variously diagnosed as attention deficit hyperactivity disorder, generalized anxiety disorder, depressive disorder not otherwise specified, major depressive disorder, and anxiety disorder. Tr. 744. The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following limitations:

> [Plaintiff] can frequently reach overhead and in all directions to the right; she can handle and finger items frequently with the left hand and the right hand; [Plaintiff] can climb ladders, ropes, or scaffolds occasionally and crawl occasionally; [Plaintiff] can never work in extreme cold and never work in vibration; she is able to perform simple, routine and repetitive tasks and perform simple work-related decisions; she can occasionally interact with supervisors and coworkers; and she can never interact with the public.

Tr. 745–46.

The ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 750. But the ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy. Tr. 750–51. As such, according to the ALJ, Plaintiff had not been under a disability since her application date of June 29, 2016. Tr. 751–52.

## II.  PLAINTIFF'S ARGUMENT

Plaintiff argues that the ALJ failed to evaluate adequately the opinions of Plaintiff's psychologist, Louis P. LaBarber, Ph.D., and psychiatrist Maria Nickolova, M.D. Dkt. 4-1, at 19–24. More specifically, she argues that the ALJ "erred by failing to follow . . . the Appeals Council's remand order where she once again failed to adequately evaluate the disability-supporting opinions of Plaintiff's treating mental health providers." *Id.* at 19.[4]

## III.  ANALYSIS

Plaintiff filed for DIB and SSI before March 27, 2017, and, as such, the ALJ was required to apply the treating physician rule in his determination. 20 C.F.R. § 404.1527; *see e.g., Barco v. Comm'r of Soc. Sec.*, 330 F. Supp. 3d 913, 918, n.2

---

[4] As noted in the ALJ's decision, the AC directed the ALJ "to either explain why [he] do[es] not credit Dr. LaBarber's and Dr. Nickolova's findings that [Plaintiff] suffers from significant limitations in the areas of mental functioning and support my explanation with record evidence, or [he] must incorporate all of those limitations into the [RFC]." Tr. 741; *see Tanya Y.*, 2022 WL 1115458, at *6 ("[O]n remand, the ALJ must either adequately explain why he does not credit Dr. LaBarber's and Dr. Nickolova's findings that [Plaintiff] suffers from significant limitations in the areas of mental functioning discussed above and support his explanation with record evidence, or he must incorporate all those limitations into the RFC.").

7

(W.D.N.Y. 2018). Generally, an ALJ determines that a treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 404.1527(c)(2); *see e.g., Estrella v. Berryhill,* 925 F.3d 90, 95 (2d Cir. 2019) (citing *Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir. 2008)); *Smith v. Berryhill,* 740 F. App'x 721, 724 (2d Cir. 2018) (holding that an ALJ "may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence" or "is internally inconsistent or uninformative"). And an ALJ will "'give good reasons in its notice of determination or decision for the weight it gives the treating [physician]'s . . . opinion.'" *Estrella,* 925 F.3d at 95–96 (quoting *Halloran v. Barnhart,* 362 F.3d 28, 32–33 (2d Cir. 2004)); *see also* 20 C.F.R. § 404.1527(c)(2).

On July 9, 2018, Dr. LaBarber completed a mental RFC questionnaire, and opined, among other things, that Plaintiff was unable to meet competitive standards in the ability to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; and deal with normal work stress. Tr. 578. Dr. LaBarber found that Plaintiff was seriously limited in her ability to maintain attention for two-hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; and ask simple

questions or request assistance. *Id.* Dr. LaBarber further mentioned that Plaintiff had a history of job terminations due to attendance and anxiety related issues, as well as a history of interpersonal friction with bosses and co-workers. *Id.*

On September 27, 2018, Dr. Nickolova completed a mental RFC questionnaire, and opined, among other things, that Plaintiff was either seriously limited or unable to meet competitive standards in every area of mental abilities and aptitudes needed to do unskilled work. Tr. 682.[5] Dr. Nickolova further described that Plaintiff was unable to pay attention or concentrate, distracted, fidgety, anxious, and became overwhelmed and stressed easily. Tr. 682–83. Lastly, Dr. Nickolova noted that Plaintiff's ability to interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in unfamiliar places, and use public transportation, was "limited but satisfactory." *Id.* at 683.

---

[5] More specifically, Dr. Nickolova opined that Plaintiff was seriously limited in her ability to understand and remember very short and simple instructions; carry out very short and simple instructions; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or requesting assistance; accept instructions and respond appropriately to criticism from supervisors; and in being aware of normal hazards and taking appropriate precautions. Tr. 682. Dr. Nickolova further opined that Plaintiff was unable to meet competitive standards in her ability to remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain and ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; complete a normal workday and workweek without interruptions from psychologically based symptoms; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. *Id.*

9

Although the ALJ did not give controlling weight to the opinions of Plaintiff's treating physicians, the ALJ otherwise provided "good reasons"—that is, "reasons supported by substantial evidence in the record"—for the weight he assigned.[6] *See Schillo*, 31 F.4th at 75 (The ALJ "will always give good reasons in [his] notice of determination or decision for the weight we give [the claimant's] treating source's opinion."); *see also* 20 C.F.R. § 404.1527(b)(2). And if "a searching review of the record" satisfies the court "that the substance of the treating physician rule was not traversed," the court will affirm the ALJ's decision. *Estrella*, 925 F.3d at 96 (quoting *Halloran*, 362 F.3d at 32).

The ALJ determined that "[t]o the extent that [Dr. LaBarber and Dr. Nickolova] opined that [Plaintiff] is unable to meet competitive standards, their opinions are not persuasive and given little weight as [Plaintiff] was able to pass a real estate test and works as a realtor." Tr. 748 (citing *id.* at 767–68, 1100–29). The ALJ further reasoned that Plaintiff "is able to go to the gym and attend appointments, and her anxiety has been noted to be under control throughout the

---

[6] Here, because the ALJ did not assign controlling weight to the opinions of Dr. LaBarber and Dr. Nickolova, he was required to "explicitly consider '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Estrella v. Berryhill*, 925 F.3d at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). An ALJ's failure to "explicitly" apply the *Burgess* factors is a procedural error and subject to a harmless error analysis. *Estrella*, 925 F.3d at 95-96. Remand is not necessary if the Court can conclude, after a "searching review of the record," that the ALJ applied the substance of the treating physician rule by providing "good reasons" for the weight assigned. *Schillo*, 31 F.4th at 75 (quoting *Estrella*, 925 F.3d at 96).

10

records of her primary care physician." Tr. 748 (citing *id.* at 1133–84). Lastly, the ALJ opined that although Plaintiff "claims that she cannot fully perform her job as a realtor, if limited to unskilled work with social functioning limitations, she would be able to perform other work." Tr. 748.

Although the ALJ did not discuss the *Burgess* factors when analyzing the opinions of Dr. LaBarber and Dr. Nickolova, the Court has reviewed the medical opinion evidence in the record and finds the ALJ's assessment is supported by substantial evidence. *See Robert H. v. Comm'r of Soc. Sec.*, 2023 WL 7319091, at *4 (W.D.N.Y. Nov. 7, 2023) ("The Court finds that although the ALJ did not explicitly identify each [Burgess] factor in his analysis, his reasons for assigning both psychiatrists' opinions limited weight were clear and supported by the record.") (citation omitted); *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) ("Supported by ample treatment notes, physical examination findings, and [plaintiff's] testimony, the ALJ's assignment of less than controlling weight to [Plaintiff's] treating physician's opinions was not in error.").

Plaintiff argues that the ALJ's reasons for giving little weight to Dr. LaBarber's and Dr. Nickolova's opinions "fails to address the fact that Plaintiff failed the real estate exam on her first try, and missed her own father's burial service because she thought it was a different time." Dkt. 4–1, at 23 (citing Tr. 1102, 1113). Plaintiff further argues that the "ALJ failed to fully address the consistency between the multiple disability-supporting limitations included in the opinions of Dr. LaBarber and Dr. Nickolova." Docket Item 4–1, at 24.

11

An ALJ's RFC determination need not perfectly correspond with opinion evidence, so long as it is consistent with the record as a whole. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). Here, the record supports the ALJ's assessment that, although Plaintiff "claims that she is not able to fully do the job as a realtor, if she is limited to unskilled work, she would be able to work." Tr. 750. The ALJ noted that Plaintiff "still does realtor work but has no earnings, which is suspect." Tr. 747. The ALJ also mentioned that Plaintiff "reported to her psychotherapist in July 2022 that she earned some money[,] and in August 2022, she told him that she had sold several homes this year but was unable to hold onto the proceeds." *Id.* (citing Tr. 1102–03). The ALJ further noted that Plaintiff was at work during the second hearing. Tr. 747.

Here, the disabling limitations within the opinions of Drs. Nickolova and LaBarber are inconsistent with their treatment notes. *Rusin v. Berryhill*, 726 F. App'x 837, 839 (2d Cir. 2018) (no error in declining to afford controlling weight to the opinion of plaintiff's treating physician when it was inconsistent with his treatment notes and diagnostic observations, the other medical opinion evidence, and plaintiff's reported activities of daily living). "Because it is the ALJ who is tasked with evaluating medical evidence, he is free to assign less than controlling weight to the opinion of a treating physician, where, as here, the opinion is not supported by the record." *Robert H.*, 2023 WL 7319091, at *4 (citation omitted).

Progress notes from Dr. Nickolova spanning from April 1, 2019, through November 23, 2022, all reported that Plaintiff denied anxiety, and that she

12

appeared to have no apparent anxiety, depression, or agitation. Tr. 1018–43. On January 12, 2021, Dr. LaBarber reported that Plaintiff failed her first real estate exam by two points, but retook the exam recently, and passed. Tr. 1109. On April 28, 2021, Plaintiff reported to Dr. Nickolova that she "passed real estate license." Tr. 1033. On May 17, 2021, Dr. LaBarber reported that Plaintiff achieved her first real estate sale. *Id.* at 1105. On December 21, 2021, Plaintiff reported to Dr. Nickolova that she has been selling houses and works in real estate. *Id.* at 1037.

On April 14, 2022, Plaintiff reported she was a realtor, and stopped seeing Dr. LaBarber "because her anxiety is pretty well controlled [and] that she [did] not need counseling currently." *Id.* at 1164–65. On May 5, 2022, Plaintiff reported she was doing well and was busy at work, and Dr. Nickolova reported that she had no apparent anxiety, depression, or agitation. *Id.* at 1039. On June 28, 2022, Dr. LaBarber reported that Plaintiff's real estate sale experience seems to be getting better, and that he did not believe she was earning enough money to be self-sustaining, but that she has been able to earn some money part-time. *Id.* at 1103. On August 30, 2022, Dr. LaBarber noted that Plaintiff's current job was seven days a week, and that although she sold several homes that year, she was "unable to hold on to any of the proceeds." *Id.* at 1102. Progress notes dated October 18, 2022, noted Plaintiff's psychiatric symptoms have been well controlled, and Plaintiff reported no concerns regarding her anxiety, and that she was working as a real estate agent and felt she was doing well. *Id.* at 1159. On December 15, 2022, Dr. LaBarber reported that Plaintiff appeared "to be having some success with the real

estate business." *Id.* at 1100. On January 26, 2023, Plaintiff reported to Dr. LaBarber that her real estate work was "very inconsistent." *Id.* at 1131.

Thus, this Court is able to glean the ALJ's rationale for assigning little weight to the disabling portions of the opinions of Dr. LaBarber and Dr. Nickolova. *See Poole v. Saul,* 462 F. Supp. 3d 137, 152 (D. Conn. 2020) ("The Court is therefore able to glean from the record the ALJ's rationale for assigning little weight to the Wong Opinion, and . . . [a]ccordingly, any purported error in the ALJ's reasoning is harmless."); *Almodovar v. Berryhill,* 2019 WL 1313883, at *11 (S.D.N.Y. Mar. 22, 2019) ("[T]he Court has no difficulty gleaning the rationale for the ALJ's decision to discount the opinion of Dr. Guy. The Court therefore concludes that the ALJ provided good reasons, and an adequate (if underwhelming) roadmap, for his decision to assign little weight to the opinion of Dr. Guy.") (alterations omitted); *Winchell v. Comm'r of Soc. Sec.,* 2015 WL 7432377, at *3 (N.D.N.Y. Nov. 23, 2015) ("Nevertheless, where the evidence of record permits the court to glean the rationale of an ALJ's decision, it is not necessary that the ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.") (internal citations and quotations omitted).

Moreover, the RFC was partially consistent with the opinions of Dr. LaBarber and Dr. Nickolova. For example, the ALJ reasoned that, "[b]y limiting [Plaintiff] to simple, routine, and repetitive tasks involving simple work-related decisions, with occasional interaction with supervisors and coworkers, and

14

no interaction with the public, I have taken into account the medical records and opinions of Dr. Nickolova and Dr. LaBarber." Tr. 748 (citing *id.* at 576–80, 637–39, 680–84, 725–37). The ALJ also noted that he based his limitation "for unskilled work with limited public contact due to mental impairments with a history of interpersonal issues, and some issues with concentration and adaptation." Tr. 750.

Plaintiff's "disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents [this Court] from reweighing it." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016). In other words, to the extent Plaintiff objects to the ALJ's consideration of the medical opinion evidence, this Court may not "decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ]." *Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011) (quoting *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986)); *see also Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh evidence.") (citing *Carroll v. Sec'y of Health & Human Services*, 705 F.2d 638, 642 (2d Cir. 1983)).

If the "administrative record contains 'sufficien[t] evidence' to support the agency's factual determinations" the court will find that its determinations are based on substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Accordingly, remand is not required here.

## CONCLUSION

For these reasons, the Court **GRANTS** the Commissioner's cross motion for judgment on the pleadings (Dkt. 5–1) and **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 4–1). The Clerk of the Court will close this case.

SO ORDERED.

Dated:    March 26, 2025
             Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE